IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WALTER JEFFERSON, # B-31401, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 11-cv-0489 -SCW |
| | ) |
| DR. FENOGLIO, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM and ORDER

**WILLIAMS, Magistrate Judge:**

Plaintiff Jefferson, a prisoner of Illinois at Lawrence Correction Center in Lawrence, IL, ("Lawrence") filed a complaint alleging various deprivations of his constitutional rights under 42 U.S.C. § 1983 (Doc. 1), seeking redress for wrongs rooted in what Mr. Jefferson alleges throughout the filings is a mostly-soy diet (*see, e.g.* Doc. 1, pp. 1, 6; Doc. 49-4, p. 1; Doc. 41-2, p. 10:13-25). Currently, there are two dueling Motions for Summary Judgment (Doc. 40) (Doc. 49), which the Court takes up at this time. For the following reasons, Defendant's Motion for Summary Judgment is **GRANTED**, and Plaintiff's Motion for Summary Judgment is **DENIED**.

### Findings of Fact

The only claim before this Court is Mr. Jefferson's allegation of deliberate indifference to his medical needs precipitated by Dr. Fenoglio's failure to order a thyroid blood test. (Doc. 12, p. 8). Both parties have moved for summary judgment on this count.

Mr. Jefferson was transferred to Lawrence in April of 2009. (Doc. 49-1, p. 6). On February 18, 2010, Mr. Jefferson was seen by the LPN, who recorded that he was experiencing cold feet and hands, and discomfort. (Doc. 49-1, p. 7). Mr. Jefferson requested a thyroid test at this

1

time. (Doc. 49-1, p. 7). On March 11, 2010, Mr. Jefferson was diagnosed with hyperlipidemia. (Doc. 41-3, p. 1). Mr. Jefferson was scheduled for hyperlipidemia labs on September 14th and August 21st during that visit. (Doc. 41-3, p. 1). A June 17, 2010 doctor's note also indicates that Mr. Jefferson requested a thyroid test; his symptoms included cold feet and hands and poor short term memory. (Doc. 49-1, p. 8). Dr. Fenoglio conducted a physical examination on that date. (Doc. 49-1, p. 8). Mr. Jefferson was seen by the LPN on July 13, 2010. (Doc. 49-1, p. 9). He again requested a thyroid test and commented that he had already been denied several times. (Doc. 49-1, p. 9). He denied current complaints. (Doc. 49-1, p. 9). Dr. Fenoglio examined Mr. Jefferson on September 13, 2010. (Doc. 49-2, p. 1). He noted hyperlipidemia and that Mr. Jefferson continued to ask for a thyroid test due to his memory loss and irregular bowels. (Doc. 49-2, p. 1). Follow-up labs were for his hyperlipidemia were again ordered. (Doc. 41-3, p. 4). Plaintiff refused medication for hyperlipidemia. (Doc. 41-3, p. 5). He did so again on March 15, 2011. (Doc. 41-3, p. 6). Plaintiff refused medication again on September 13, 2011 and March 1, 2012. (Doc. 41-3, pp. 7-8). Dr. Fenoglio swore out an affidavit stating that he did not test Mr. Jefferson for thyroid function during his tenure at Lawrence because Mr. Jefferson's symptoms did not clinically indicate that test. (Doc. 49-2, p. 12). Dr. Fenoglio left Lawrence in October of 2012. (Doc. 49-2, p. 11).

On March 13, 2013, Plaintiff had a thyroid test at the University of Illinois Medical Center. (Doc. 49-1, p. 10). The test results showed that his thyroid was functioning within a normal range. (Doc. 49-1, p. 10). He discussed these results with a Licensed Practical Nurse, who explained to Mr. Jefferson that "[his] thyroid levels are normal," and whose professional judgment in light of his symptoms was to "educate [Mr. Jefferson] on proper diet and exercise." (Doc. 49-7, pp. 7-8).

2

Mr. Jefferson has no medical training (Doc. 41-2 pp. 4-5) and no dietary training sufficient to make him competent to testify about causal relationships between a soy diet and health conditions. (Doc. 41-2 pp. 4-5).

## Conclusions of Law

**A.     Summary Judgment Standard**

Summary judgment, which is governed by FEDERAL RULE OF PROCEDURE 56, is proper only if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. ***Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) (citing FED. R. CIV. P. 56(a)).**[1] The party seeking summary judgment bears the initial burden of demonstrating, based on the pleadings, affidavits and/or information obtained via discovery, the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett,* **477 U.S. 317, 323 (1986).** A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. ***Anderson,* 477 U.S. at 248**. If a party fails to properly address another party's assertion of fact, courts may "grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it." **FED. R. CIV. P. 56(e).** A mere scintilla of evidence supporting the non-movant's position is insufficient; a party will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion. ***Albiero v. City of Kankakee,* 246 F.3d 927, 931–32 (7th Cir. 2001). *See also Steen v. Myers,* 486 F.3d 1017, 1022 (7th Cir. 2007) ("[S]ummary judgment is . . . the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.") (internal quotation marks omitted).** There is "no genuine issue of material fact when no reasonable jury could find in favor of the nonmoving party." ***Van***

---

[1] Though Rule 56 was amended in 2010, the amendment did not change the summary judgment standard. ***Sow v. Fortville Police Dept.*, 636 F.3d 293, 300 (7th Cir. 2011).**

3

***Antwerp v. City of Peoria*, 627 F.3d 295, 297 (7th Cir. 2010); *accord Anderson*, 477 U.S. at 248 (finding material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party).**

At summary judgment, the Court's role is not to evaluate the weight of the evidence, to judge witness credibility, or to determine the truth of the matter, but rather to determine whether a genuine issue of triable fact exists. ***Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).**

B.  **Deliberate Indifference to Plaintiff's Medical Needs**

An inmate's dissatisfaction with medical care he receives in prison does not state a constitutional claim for deliberate indifference to medical needs, even if the care was substandard to the point of negligence or malpractice. ***Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Sanville v. MacCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996).** But in certain circumstances, a constitutional claim may lie if a prison official's actions amount to a failure to treat a serious medical condition. Whether a prison official has been deliberately indifferent depends on a 2-part test: "the plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard." ***Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000).** The first prong of the test is a threshold inquiry: inmates without objectively serious medical conditions under the law cannot have been treated with deliberate indifference to their medical needs actionable under **42 U.S.C. § 1983**.

The Seventh Circuit considers the following to indicate a serious medical need: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain;" (2) the "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment;" (3) the "presence of a medical condition that

4

significantly affects an individual's daily activities;" or (4) "the existence of chronic and substantial pain." ***Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)**. Alternatively, a plaintiff can demonstrate a condition that is so obvious that even a lay person would easily recognize the necessity of medical treatment is a serious medical need. ***Id.***

## Analysis

Mr. Jefferson has failed to produce any evidence that he suffers a medical condition serious enough to satisfy the threshold inquiry. The only diagnosis by medical professionals he presents to the Court is "asymptomatic hyperlipidemia," which is a condition involving abnormally high lipids or lipoproteins in the blood. (Doc. 41-3, p. 1). Even taking his allegations of suffering symptoms variously described as "memory loss, bowels [*sic*], and gastrointestinal problem[s] [and] other issue[s]," (Doc. 49, p. 3 ¶7), "memory loss, low blood pressure, and brain fog" (Doc. 30, p. 7), and "brainfog [*sic*], memory loss, low body temperature, cold all the time" (Doc. 1-1, p. 1) at face value and as maladies truly suffered, these vague symptoms do not rise to the level of seriousness that could satisfy any of the above alternatives.

The only injury Mr. Jefferson suffers that is evident from the record is his hyperlipidemia, which he has refused treatment for a period of at least two years. Even if hyperlipidemia does qualify as an injury that a reasonable doctor or patient would find important or worthy of comment, an inmate's willing and un-coerced refusal to be treated for it cannot be grounds for a doctor's liability for deliberate indifference to a prisoner's medical needs. Mr. Jefferson's alleged thyroid deficiency is not material to this prong of the objectively-serious-injury analysis, which asks if there exists an injury that a reasonable doctor or patient would find important or worthy of comment because his thyroid is objectively healthy.

Even supposing Mr. Jefferson has an undiagnosed medical condition underlying his complained-of symptoms, he has submitted no evidence that it or the symptoms significantly affect

5

his daily activities. Mr. Jefferson has not submitted any evidence that he suffers pain at all, much less chronic and substantial pain. The only reference to pain that appears in the record is Mr. Jefferson's assertion in his pleadings and that he is "in constant pain and suffering." This allegation is uncorroborated by the symptoms listed in his medical records during the relevant time period. Finally, Mr. Jefferson has not produced any evidence that he suffers from a condition so obvious that that even a lay person would easily recognize the necessity of medical treatment. Quite the opposite is true. The record shows that Mr. Jefferson's thyroid is healthy, (Doc. 41-5, p.1), and that in his lay judgment, his hyperlipidemia does not bear treatment, (Doc. 41-3, pp. 5-9).

Thus this Court is left to conclude that Mr. Jefferson is simply unhappy with his medical care under Dr. Fenoglio. In view of the alternative self-diagnoses Mr. Jefferson presents to the court across his filings, Mr. Jefferson's dissatisfaction seems to stem from Dr. Fenoglio's failure to investigate Mr. Jefferson's wandering diagnoses of his vaguely-stated symptoms related to his soy diet. (*See* Docs. 1-1, 49-1, 52). The one thing each diagnosis has in common is that somehow, by depressing his thyroid function or by causing internal visceral bleeding, the high levels of soy in the prison diet at Lawrence are to blame. Simply working as a food handler in prison does not qualify a person to credibly speculate about dietary causes of medical symptoms. In view of the circumstances, Mr. Jefferson is simply dissatisfied with his high-soy diet, and he is unhappy that Dr. Fenoglio would not investigate his lay theories

Mr. Jefferson does not suffer an objectively serious medical condition as defined by the five-alternative **Gutierrez** standard, and thus the facts of the instant case fail the **Sherrod v. Lingle** test. Because the record shows that Mr. Jefferson does not suffer an objectively serious medical condition, the court need not consider whether Dr. Fenoglio acted with deliberate indifference to Mr. Jefferson's needs—a doctor cannot be liable for failure to treat a condition that

does not exist. While failure to treat an inmate can amount to unlawful deliberate indifference, refusing to pursue every, or even one diagnostic line of inquiry a non-expert inmate raises cannot.

Because the undisputed material facts show that Mr. Jefferson does not suffer an objectively serious medical condition, summary judgment in favor of Defendant Fenoglio is proper.

## Conclusion

Accordingly, the Court **DENIES** Plaintiff's Motion for Summary Judgment, and **GRANTS** Defendant's Motion for Summary Judgment. The Clerk of the Court is directed to enter judgment in Defendant's favor and close the case.


**IT IS SO ORDERED**.
DATE: December 17, 2013.

/s/ *Stephen C. Williams*
**STEPHEN C. WILLIAMS**
United States Magistrate Judge